[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: April 4, 1997 Date of Application: April 4, 1997 Date Application Filed: April 4, 1997 Date of Decision: April 23, 2002
Application for review of sentence imposed by the Superior Court, G. A. 15 at New Britain.
Docket No. CR96-161852 CT Page 6877
Robert McKay, Defense Counsel, for Petitioner.
Richard L. Palombo, Jr. Assistant State's Attorney, for the State.
Sentence Affirmed.
 BY THE DIVISION
Following a trial by jury the petitioner was convicted of four counts of sale of narcotics by a non-drug dependant person; four counts of sale of narcotics within 1500 feet of a public housing project; conspiracy to distribute narcotics and threatening. He was sentenced to a total effective sentence of 27 years. The factual bases underlying his convictions are as follows: (See State v. Kenney, 53 Conn. App. 305,307-310 (1999).
 From August, 1995, to May, 1996, the New Britain police department and the statewide narcotics task force conducted an investigation of drug trafficking by gang members in various New Britain public housing projects. The defendant was one of a large number of people who were the target of this investigation, as he was known to be a founding member of a gang. On four separate occasions during the course of the investigation, the police, with the assistance of an informant, purchased cocaine from the defendant at his home at 132 Summit Road in the Pinnacle Heights public housing project. The police informant, Edward Clemonts, made the four purchases and was accompanied on three occasions by an undercover state police officer, Matthew Barnwell. A number of police officers and task force personnel provided surveillance and backup support during the purchases.
 Three of the four purchases were conducted in a similar manner. Prior to each purchase, Clemonts met a police officer who took him to the rear parking lot of a hotel in Plainville, which was the assembly point for the purchases. There, Clemonts was searched to ensure that he did not possess any illegal substances. Thereafter, Clemonts was instructed as to the quantity of cocaine he was to purchase from the defendant. Barnwell, who had been given recorded cash, then drove Clemonts to the defendant's residence CT Page 6878 where he gave Clemonts cash to make the purchase. Clemonts approached the defendant and bought the drugs. Following the purchase, Barnwell and Clemonts returned to the hotel parking lot and gave the cocaine to the police, who field-tested it. The results were positive. Clemonts was then taken to a location of his choice and paid cash ranging in amount from $30 to $120, in consideration of his participation.
 The fourth purchase differed in that Clemonts was not accompanied by an undercover officer and there was no prepurchase assembly at the Plainville parking lot. On that occasion, New Britain police detective Jack Wenz met Clemonts, searched him, gave him purchase money and drove him to the vicinity of the defendant's home. Wenz concealed himself and watched Clemonts walk to the defendant's residence. When Clemonts returned with the cocaine, Wenz obtained a positive field test of the substance and drove Clemonts to a location of his choice. Clemonts never received advance notice of the amount of cocaine he was to purchase and in each instance purchased either an eighth or a quarter ounce of cocaine from the defendant.
 Clemonts had known the defendant for fifteen years and lived across the street from him at Pinnacle Heights; the two socialized in the defendant's home. Clemonts bought drugs from the defendant every other day. The defendant occasionally supplied Clemonts with drugs on credit, a practice known as fronting. Clemonts observed the defendant in his home preparing crack cocaine and engaging in larger drug transactions with other dealers. The defendant enlisted Clemonts' help in selling drugs and paid him in either cash or drugs.
 Ian Tardiff was also an original member of the defendant's gang. He verified that from February, 1995, through May, 1996, the gang engaged in drug trafficking throughout New Britain, using violence and intimidation to control the drug traffic in that area, particularly in the public housing projects. Gang members kept one another informed about police activity. Tardiff sold large quantities of drugs to the defendant when the defendant's regular supplier CT Page 6879 was not available. The defendant also fronted drugs to Tardiff. Edwin "Pooba" Gomez, Melvin Castro and Anthony Walser were the gang's major drug suppliers.
 Walser began selling small quantities of cocaine to the defendant during the summer of 1995. These transactions became more frequent over several months. Walser observed the defendant store drugs in a mock beer can with a removable lid. At the end of 1995, Walser sold the defendant 500 grams of cocaine. The defendant also had dealings with Pooba, who was known as a large-scale drug dealer. Walser's relationship with the defendant ended in February, 1996, when Walser was arrested on federal drug charges.
 The defendant was arrested at his home on May 3, 1996. Pursuant to a search warrant, police seized the following items from the defendant's home at that time; a quantity of small plastic bags; a pager; a list of police radio frequencies; notes and records of drug transactions in the defendant's handwriting, including references to Pooba; a reminder to engage in "no more frontin'"; and the fake beer can. No drugs were recovered.
 The defendant was transported with others who had been arrested to the holding area of the New Britain police department. The defendant said to Officer Carol Zesut, who was on duty in the holding area: "Blondie, I know where you live. I know what you drive. You drive a blue Trooper. And if it takes me three days eating crackers under your porch, I'm going to get you." Zesut was alarmed by this threat because she did drive a blue Isuzu Trooper and her home had an elevated deck surrounded by lattice work. Because of his reputation, Zesut knew that the defendant was capable of carrying out his threat.
Kenney's attorney asks the Division to consider what he characterized as relatively small amounts of cocaine. The attorney for the state, in defense of the propriety of the sentence, points out that these were sales made with a profit motive.
The petitioner's criminal record is appalling and his chosen way of life is one of disregard for the rights of others in the community. His CT Page 6880 record includes convictions for a residential burglary, violation of probation on three occasions, possession of narcotics and sale of narcotics and carrying a pistol without a permit. A 1987 search of his apartment yielded weapons, stolen property and over sixteen grams of cocaine. In 1989, while on parole from the 1987 arrest, he was caught with six ounces of cocaine.
His attitude of defiance toward authority is chillingly shown in his threat to an officer of the New Britain Police Department.
The sentence imposed in this case in light of all the circumstances was appropriate and proportionate. (See Practice Book § 43-28). The sentence is affirmed.
KLACZAK, JUDGE.
NORKO, JUDGE.
MIANO, JUDGE.
Klaczak, Norko and Miano, J's, participated in this decision.